USDC SDNY
DOCUMENT ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 6/29/17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BARBARA LUKA,

              Plaintiff,

-against-

BARD COLLEGE, FRANK SCALZO, MICHÈLE DOMINY, and LEON BOTSTEIN,

              Defendants.

15-cv-04598 (ALC) (DCF)

**OPINION AND ORDER**

**ANDREW L. CARTER, JR., United States District Judge:**

    Plaintiff Barbara Luka brings this action against her former employer, Defendant Bard College, and three individuals affiliated with Bard: Frank Scalzo, Michèle Dominy, and Leon Botstein. She alleges that Defendants discriminated against her on the basis of her age, gender, perceived disability, and sexual orientation, in violation of the Age Discrimination in Employment Act, the Americans with Disabilities Act, and the New York State Human Rights Law. She also alleges that Defendants retaliated against her in violation of Title VII and the New York State Human Rights Law. Defendants move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Plaintiff's age, gender, and disability discrimination claims. For the reasons that follow below, Defendants' motion is granted in part and denied in part.

## BACKGROUND

**I.    Factual Background**

    The following facts are drawn from Plaintiff's Second Amended Complaint, and are presumed to be true for purposes of this motion to dismiss. ECF No. 81 ("Compl.").

    Plaintiff is a 48-year-old lesbian. Compl. ¶ 5. She formerly was employed as a Visiting Professor and an Assistant Professor by Bard College ("Bard" or the "College"), a private liberal arts university in Dutchess County, New York. *Id.* ¶¶ 5-6. The individual defendants are all

1

associated with Bard: Defendant Frank Scalzo is a professor at Bard and the former Chair of the Psychology Program, Defendant Michèle Dominy is a former Vice President and Dean of Bard, and Defendant Leon Botstein is the President of Bard. *Id.* ¶¶ 7-9.

Plaintiff is a scientist who "conducts research on the neurological and cognitive bases of language comprehension and human memory." *Id.* ¶ 20. She received her PhD in 1999. *Id.* ¶ 134. In May 2003, Bard hired Plaintiff for a two-year appointment as a Visiting Professor in the Psychology Program. *Id.* ¶¶ 12, 16. In 2005, the College hired her into a tenure-track position. *Id.* ¶ 16. At Plaintiff's pre-tenure review in 2007, Scalzo recommended her for reappointment and gave her a positive evaluation. *Id.* ¶ 32. Then, sometime the following year, Scalzo became aware of Plaintiff's sexual orientation, and his attitude toward her became "actively very hostile." *Id.* ¶¶ 33-34. After leaving the College, Plaintiff subsequently learned that Scalzo "regularly" referred to Plaintiff and her partner as a "bitch" and, on one occasion, commented that Plaintiff seemed like she was having a "hormonal surge." *Id.* ¶ 63.

Plaintiff first stood for tenure during the 2009-2010 academic year, at which time, in Plaintiff's estimate, her "academic file and her external evaluations were exemplary." *Id.* ¶ 18. Accordingly, Plaintiff's tenure application "garnered broad support from faculty across the College." *Id.* However, Plaintiff learned during the course of her tenure review that Scalzo "falsely and maliciously" told faculty members, including those in positions to evaluate Plaintiff's tenure application, that Plaintiff was "mentally unstable," and told others in the Psychology Program that Plaintiff was "crazy" and "did not deserve tenure." *Id.* ¶¶ 35-36. At the time Plaintiff first was evaluated for tenure, Scalzo was the only active tenured member in the Psychology Program. *Id.* ¶ 30. Scalzo also served as the Division Evaluator for Plaintiff's tenure process, in which capacity he gave her a negative recommendation, falsely claiming that

2

she was not collegial with members of the Psychology Program. *Id.* ¶ 43. He recommended against Plaintiff's tenure, and Dominy, then the Dean, adopted that recommendation. *Id.* ¶ 46.

At the next step in the tenure process, the Faculty Evaluation Review Committee ("FERC") supported Plaintiff's tenure application, by a vote of three to two. *Id.* ¶ 47. Botstein, the President of Bard, had the final decision on Plaintiff's tenure, but rather than grant or deny her application, he offered Plaintiff a three-year extension of her current contract. *Id.* ¶ 48. Prior to making that decision, Botstein told Plaintiff that her "sexual orientation was not an issue to him," but implied that it was an issue for Scalzo. *Id.* ¶¶ 49-51. Botstein also told Plaintiff that he wanted to extend her contract rather than grant her tenure because he was "troubled by the inconsistency" between the positive reviews Plaintiff received from people outside the Psychology Program and the negative reviews by Scalzo and other members of the Psychology Program. *Id.* ¶ 52. In response, Plaintiff explained that Scalzo occupied a position of power within the Psychology Program given his presiding status over other professors' pre-tenure reviews, and further noted that these more junior faculty members knew Scalzo did not like Plaintiff. *Id.* ¶¶ 53-54.

Plaintiff next was evaluated for tenure in 2013. *Id.* ¶ 106. In the years between her tenure applications, another member of the Psychology Program, Beth Gershuny, lodged a complaint of sexual harassment against Scalzo. *Id.* ¶¶ 56-62, 69-73. In addition to raising her own complaints, Gershuny told Dominy that Scalzo treated Plaintiff in a similar manner. *Id.* ¶ 71. The College commenced an investigation, but only after Gershuny had been recommended for tenure. *Id.* ¶¶ 72-75. Dominy told Plaintiff that she had kept Gershuny's complaint confidential until that point so as not to harm Gershuny's chances in her tenure application. *Id.* ¶¶ 80-82. During this same conversation, Plaintiff raised her own problems with Scalzo,

explaining that she had not previously brought these issues forward for fear it would make matters worse. *Id.* ¶¶ 85-89.

During the course of Bard's investigation into Gershuny's complaint, the investigator interviewed Plaintiff. Plaintiff told the investigator about "all the ways Defendant Scalzo had made her life miserable." *Id.* ¶ 90. Based on a conversation with another member of the Psychology Program, Plaintiff believes that Dominy and Botstein were aware of the allegations Plaintiff relayed to the investigator. *Id.* ¶ 100. After Plaintiff's interview with the investigator, Dominy began to act hostile toward Plaintiff. *Id.* ¶¶ 101-05. In particular, when Scalzo went on sabbatical in the fall of 2011, Dominy appointed two of Plaintiff's junior colleagues to run the Psychology Program, rather than Plaintiff, who was the most senior faculty member. *Id.* ¶ 104. Plaintiff believes this negatively impacted her 2013 tenure application. *Id.* ¶¶ 105, 128.

At the time of Plaintiff's tenure review in 2013, she received positive external reviews. *Id.* ¶ 113. Additionally, consistent with Botstein's written evaluation from Plaintiff's last tenure review, Plaintiff published several articles in "peer reviewed and prestigious journals." *Id.* ¶ 110. While Dominy initially told Plaintiff that Scalzo would recuse himself from consideration of Plaintiff's tenure, that proved not to be true. *Id.* ¶¶ 111-14. Plaintiff believes that Dominy's decision to allow Scalzo to participate in Plaintiff's tenure review was in retaliation for Plaintiff's participation in the investigation prompted by Gershuny's complaints. *Id.* ¶ 117.

At Plaintiff's tenure discussions, held on February 27, 2013, Scalzo read a "highly negative" prepared statement, denigrating Plaintiff's ability to work with her colleagues and her work within the Psychology Program, even though Plaintiff's interactions with colleagues never had been raised with her before. *Id.* ¶¶ 123-24. Plaintiff did not receive any votes in favor of her tenure. *Id.* ¶ 130. Plaintiff believes that Scalzo pressured the more junior faculty members to speak against Plaintiff's tenure application, and that they did so out of concern for their own

4

tenure applications. *Id.* ¶¶ 118-19. Plaintiff's Division Evaluator told her that members of the Division thought she was a strong candidate in research, teaching, and service, but felt they had to defer to the Psychology Program's view of her candidacy. *Id.* ¶ 129.

Thereafter, Plaintiff requested that the FERC overturn the negative tenure recommendation and expressed her belief that the negative recommendation had been "tainted with discrimination and retaliation." *Id.* ¶ 131. The FERC also voted against Plaintiff's tenure, three votes to two. *Id.* ¶ 132. The FERC provided Plaintiff a memorandum explaining the reasons for its decision. While the FERC generally was favorable regarding Plaintiff's teaching, research, and service, they described Plaintiff as "mid-career," and expressed an expectation that she should have been more productive for someone at that stage of her career. *Id.* ¶ 133. Plaintiff denies being mid-career and construes this remark as age-based. *Id.* ¶ 134. Plaintiff wrote a letter to this effect which was included in her file for the next levels of review. *Id.* ¶ 135.

Dominy reviewed Plaintiff's file next. *Id.* ¶ 136. Dominy recommended that Plaintiff's tenure be denied, repeating concerns about Plaintiff's publication record and ignoring the positive reviews of Plaintiff's work contained in her file. *Id.* ¶¶ 136-37. Finally, Botstein reviewed Plaintiff's tenure application. *Id.* ¶ 138. He, too, concurred in the decision to deny Plaintiff's tenure. *Id.* ¶¶ 142-49. Plaintiff attempted to appeal Botstein's decision to Bard's Board of Trustees, but they denied her request and affirmed the tenure decision. *Id.* ¶¶ 150-51.

After Plaintiff's employment ended, she learned that the College sought to replace her with someone younger. *Id.* ¶¶ 152-53. She also understands, from a review of the Bard website, that all subsequent hires by the Psychology Program have been male. *Id.* ¶ 120.

## II. Procedural Background

Plaintiff initiated this action on June 12, 2015, bringing claims that Defendants discriminated against her on the basis of her age, disability, and sexual orientation, and retaliated

5

against her, in violation of the Age Discrimination in Employment Act ("ADEA"), the Americans with Disabilities Act ("ADA"), Title VII, and the New York State Human Rights Law ("NYSHRL"). On April 8, 2016, Defendants moved to dismiss Plaintiff's age and disability discrimination claims. ECF Nos. 17-19. After briefing on Defendants' motion to dismiss was complete, Plaintiff sought leave to amend her Complaint to bolster her disability discrimination claims in light of Defendants' motion to dismiss, and to add a gender discrimination claim. ECF No. 28.

The Court granted Plaintiff's motion to amend, and Plaintiff filed her First Amended Complaint on October 4, 2016. ECF Nos. 38, 40. Defendants again moved to dismiss Plaintiff's age and disability discrimination claims, as well as her newly-added gender discrimination claim. ECF Nos. 49 (Motion), 50 (Declaration of Scott Rabe), 51 ("Defs' Memo."). Plaintiff then filed her opposition and Defendants submitted their reply. ECF No. 64 ("Pl's Memo."); ECF No. 66 ("Defs' Reply"). Yet again, after briefing on the motion to dismiss was complete, Plaintiff sought to amend her Complaint to include reference to an email received during discovery. ECF No. 67. The Court again granted Plaintiff's motion to amend, cautioning her that the Court would be unlikely to allow additional amendments after any decision on Defendants' renewed motion to dismiss. ECF No. 78.

Plaintiff filed her Second Amended Complaint on December 22, 2016, and Defendants supplemented their previous motion to dismiss to address the amended pleadings with respect to Plaintiff's age discrimination claim. *See* ECF Nos. 82 (Motion), 83 (Declaration of Scott Rabe ("Rabe Decl.")), 84 ("Defs' Supp. Memo."). Plaintiff filed her opposition to the motion, ECF No. 86 ("Pl's Supp. Memo."), and Defendants submitted their reply, ECF No. 89 ("Defs' Supp. Reply"). Accordingly, the Court considers the motion fully submitted.

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully," and accordingly, where the plaintiff alleges facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In considering a motion to dismiss, the court accepts as true all factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *See Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008). However, the court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Instead, the complaint must provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (citing *Twombly*, 550 U.S. at 555). The court "may consider the facts as asserted within the four corners of the complaint together with the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (citation and internal quotation marks omitted).

## DISCUSSION

**I.     Age Discrimination**

The ADEA provides that "[i]t shall be unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). To survive a motion to dismiss an age discrimination claim brought under the ADEA or the NYSHRL, a plaintiff must plausibly allege that she "is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn v. City of N.Y.*, 795 F.3d 297, 311 (2d Cir. 2015). A plaintiff also must plausibly allege "that age was the but-for cause of the employer's adverse decision." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009) (internal quotation marks omitted)).[1]

Defendants do not contest that Plaintiff was within the protected age group or that she experienced an adverse employment action; instead, they argue that Plaintiff has not plausibly alleged that the circumstances surrounding her tenure application rejection give rise to an inference of age discrimination. Defs' Supp. Memo. at 7-12. Plaintiff bases her age discrimination claim on two incidents: First, the FERC's decision to describe Plaintiff as "mid-career" in its memorandum outlining the reasons for its vote recommending against her tenure in 2013. Compl. ¶¶ 133, 179, 186; *see also* Rabe Decl., Ex. C (FERC Memorandum dated Apr. 24, 2013). And, second, an email between Dominy and Botstein in which they describe a candidate

---

[1] Generally, claims of age discrimination under the NYSHRL are evaluated under the same standard as the ADEA, and the Court of Appeals for the Second Circuit has assumed, without deciding, that this includes the requirement that age be a "but for" cause of the adverse employment action. *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 n.6 (2d Cir. 2010).

8

for the Psychology Program as "young in her career." Compl. ¶¶ 152-53; *see also* ECF No. 71, Ex. A (Emails dated Dec. 17-18, 2014) (filed under seal).

While Plaintiff needed to provide only "minimal support for the proposition that [Bard] was motivated by discriminatory intent," she has fallen short of meeting this low burden. *Littlejohn*, 795 F.3d at 311. With respect to the first of the two alleged comments, it does not raise an inference of discriminatory animus because "[e]mployment decisions driven by factors that are empirically intertwined with age are not discriminatory so long as they are motivated by 'some feature other than the employee's age.'" *Criley v. Delta Air Lines, Inc.*, 119 F.3d 102, 105 (2d Cir. 1997) (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609 (1993)); *see also Williams v. City of N.Y.*, 602 F. App'x 28, 29 (2d Cir. 2015).

On the face of the Second Amended Complaint, Plaintiff provides evidence that her "mid-career" *age* was not the reason for the FERC's decision to deny her tenure application. Rather, it was the FERC's concern that, as a mid-career professional, Plaintiff had not published more to-date. Compl. ¶ 133; Rabe Decl., Ex. C. In discussing the status of her research, the FERC noted that, although Plaintiff had increased her productivity since her previous tenure review, the quality of this new work was not as high as some members of the FERC would have liked, and the fact remained that the FERC believed she "should have a stronger record of publication in her field." Rabe Decl., Ex. C.

While Plaintiff takes issue with her characterization as a mid-career professional, she alleges that she received her PhD in 1999, making her 14 years into her career at the time of her second tenure review. Pl's Supp. Memo. at 10; Compl. ¶ 134. Given that, the classification of Plaintiff as "mid-career" does not raise an inference that Defendants misclassified her in order to manufacture a reason to deny tenure while masking their true age-based motivation. Moreover, the FERC's reference to Plaintiff's career status was backward- not forward-looking,

9

undercutting Plaintiff's argument that the "mid-career" comment reflected a stereotype that her productivity would slow due to age. Pl's Supp. Memo. at 12.[2]

Nor does the email exchange between Dominy and Botstein regarding candidates for the Psychology Program bathe the FERC's comment in a discriminatory light or otherwise suggest that Plaintiff was denied tenure on the basis of her age. While "allegations that a younger employee has been favored over a qualified plaintiff can be sufficient to provide a basis for an inference of discrimination," Plaintiff has not made that allegation here. *Szewczyk v. City of N.Y.*, No. 15-cv-918 (MKB), 2016 WL 3920216, at *10 (E.D.N.Y. July 14, 2016). Although Dominy mentioned that this candidate was "young in her career," the rest of her email indicates that Dominy was not focused on this candidate's age so much as her resultant lack of experience. Moreover, it seems Dominy did not view this fact favorably. ECF No. 71, Ex. A ("No postdoc—she is young in her career, no teaching. That doesn't really worry me."). While Botstein considered this candidate's lack of experience as a potentially positive factor, the most logical reading of his email is that he was motivated by a desire to hire someone who could develop their research and publication at the College. *Id.* The FERC's belief that Plaintiff did not sufficiently develop her research and publication record after being hired by Bard and working there for nearly ten years does not suggest that either the decision not to grant Plaintiff tenure or the consideration of this other applicant were motivated by age. In any event, as the parties agree, this candidate, a woman, was not hired. *See* Defs' Supp. Memo. at 11; Compl. ¶ 120.

The Court therefore finds that the facts alleged by Plaintiff do not raise a minimal plausible inference of discriminatory intent—let alone an inference that age was the but-for

---

[2] In a footnote, Plaintiff describes a variety of factors that she believes support her contention that her relatively weak publication record was a pretextual reason for denying her tenure. *See* Pl's Supp. Memo at 10 n.5. However, none of these facts appear anywhere in her Complaint, which she has amended twice in response to Defendants' earlier motions to dismiss, and the Court will not consider them in deciding the instant motion.

10

cause of the denial of her tenure application. Accordingly, Plaintiff has not plausibly pled an age discrimination claim and these causes of action under the ADEA and NYSHRL are dismissed.

## II. Disability Discrimination Claim

The ADA makes it unlawful to "discriminate against a qualified individual on the basis of disability in regard to . . . the hiring, advancement, or discharge of employees, . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Under both the ADA and the NYSHRL, a plaintiff's *prima facie* case requires proof that: "(1) the defendant is covered by the ADA; (2) plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of his disability or perceived disability." *Capobianco v. City of N.Y.*, 422 F.3d 47, 56 (2d Cir. 2005).[3] However, as with ADEA claims, a plaintiff alleging disability discrimination "is not required to plead a *prima facie* case under *McDonnell Douglas* to defeat a motion to dismiss," and "need only give plausible support to a minimal inference of discriminatory motivation at the pleading stage." *Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16, 21 (2d Cir. 2015) (quoting *Vega*, 801 F.3d at 84) (alterations and internal quotation marks omitted). Because Plaintiff has denied that she actually has a disability, *see* Compl. ¶ 38, she also must allege that she was discriminated against because Defendants "regarded [her] as having a mental or physical impairment." *Hilton v. Wright*, 673 F.3d 120, 129 (2d Cir. 2012).

Here, again, Defendants focus their argument on Plaintiff's failure to allege facts giving rise to an inference of discriminatory intent. Defs' Memo. at 12-16. Plaintiff bases her claims on comments allegedly made by Scalzo during Plaintiff's 2009-2010 tenure review. Compl.

---

[3] The ADA standard generally applies to disability discrimination claims brought under the NYSHRL. *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 117 n.1 (2d Cir. 2004).

11

¶¶ 35-38. Specifically, she alleges that Scalzo told faculty members who were in a position to evaluate Plaintiff's tenure application that she was "mentally unstable," and told Plaintiff's other colleagues in the Psychology Program that she was "crazy," and therefore "did not deserve tenure." *Id.* ¶¶ 35-36. Scalzo also allegedly asked a member of Bard's clinical faculty "to give him a clinical diagnosis" of Plaintiff. *Id.* ¶ 37. There are at least two problems with Plaintiff's perceived disability discrimination claims that warrant their dismissal.

First, Scalzo's comments constitute stray remarks not suggestive of discriminatory intent by those in a position to decide Plaintiff's tenure application. As a general matter, verbal comments may raise an inference of discrimination, but not where they lack a "causal nexus to the termination decision." *Williams v. Victoria's Secret*, No. 15-cv-4715 (PGG) (JLC), 2017 WL 1162908, at *8 (S.D.N.Y. Mar. 28, 2017) (citation and internal quotation marks omitted). Isolated comments, while potentially offensive, do not lead to an inference of discriminatory intent. To determine whether a particular comment is probative of discriminatory animus or is a mere "stray remark," a court considers: "(1) who made the remark, *i.e.*, a decisionmaker, a supervisor, or a low-level co-worker; (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark . . . ; and (4) the context in which the remark was made, *i.e.*, whether it was related to the decisionmaking process." *Schreiber v. Worldco, LLC*, 324 F. Supp. 2d 512, 519 (S.D.N.Y. 2004); *see also Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 149-50 (2d Cir. 2010).

Considering these factors, Scalzo's comments constitute stray remarks that do not give rise to an inference of disability-based discrimination. As to the first factor, the comments were not made by the ultimate decisionmaker, although they were made by one of Plaintiff's supervisors. Even if they had been made by a decisionmaker, however, that, "without more, cannot prove a claim of employment discrimination." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239

F.3d 456, 468 (2d Cir. 2001). Plaintiff has failed to allege the "more" required. As to the remaining factors, while Scalzo made at least one of the comments in the context of Plaintiff's 2009-2010 tenure review, Bard's non-decision on Plaintiff's first tenure application is not the adverse employment action at issue in this case. Plaintiff is challenging the College's decision to deny her application for tenure in 2013, approximately three years later. Therefore, the alleged remark was neither made close in time to the decision nor in relation to the specific employment decision challenged. *See, e.g., Moore v. Verizon*, No. 13-cv-6467 (RJS), 2016 WL 825001, at *9 (S.D.N.Y. Feb. 5, 2016) (remarks made one year prior to termination not related to decision to terminate); *Mesias v. Cravath, Swaine & Moore LLP*, 106 F. Supp. 3d 431, 438 (S.D.N.Y. 2015) (same, where comments made three months to one and a half years before plaintiff's termination); *LaSalle v. City of N.Y.*, No. 13-cv-5109 (PAC), 2015 WL 1442376, at *5 (S.D.N.Y. Mar. 30, 2015) (same, where two years between comments and adverse employment action).

Nor does anything about Plaintiff's 2013 tenure review suggest that Scalzo's 2009-2010 comments persisted in impacting either his decision or anyone else's. Indeed, nothing that occurred during the course of Plaintiff's 2013 tenure review suggests that anyone, including Scalzo, believed Plaintiff was crazy. Rather, the FERC's memorandum details the numerous reasons it recommended denying Plaintiff's 2013 tenure application, all unrelated to Plaintiff's mental stability. *See, e.g., Cain v. Mandl Coll. of Allied Health*, No. 14-cv-1729 (ER), 2015 WL 3457143, at *5 (S.D.N.Y. May 29, 2015) (failure to allege causal connection where complaint included non-discriminatory reasons for dismissal); *Mesias*, 106 F. Supp. 3d at 438 (same). Plaintiff's argument that Scalzo's observations about Plaintiff's "lack of collegiality" suggest continued animus regarding her perceived disability is too farfetched to withstand a motion to dismiss. *See* Pl's Memo. at 20-21. Guided by these factors, the Court concludes that, on

balance, Scalzo's alleged comments were stray remarks, insufficient to raise a plausible inference of discrimination.

Second, with respect to Plaintiff's ADA claim, in particular, she does not allege that Scalzo believed she had a disability. While Plaintiff asserts that she intended to allege that Scalzo actually "believed that Plaintiff was mentally unstable," even assuming that is a plausible interpretation of the facts alleged, this does not save her ADA claim. Pl's Memo. at 19. In her responsive briefs, she has made clear her theory that Scalzo's basis for believing Plaintiff was mentally unstable was her homosexuality. *See* Pl's Memo. at 3 ("[W]hen Frank Scalzo learned Plaintiff was a lesbian, not only did he decide to discriminate against her as a lesbian per se, but also . . . as a person whom he deemed 'mentally ill.'"), 8 ("After Defendant Scalzo learned Plaintiff was lesbian he began to perceive her as mentally ill . . . ."). And, as Defendants note, homosexuality is not a disability or impairment under the ADA. Defs' Reply at 9 (citing 42 U.S.C. § 12211(a)). Therefore, even if Scalzo believed that Plaintiff's status as a lesbian rendered her "mentally unstable," this belief does not constitute a perception that Plaintiff had a disability as defined by the ADA.[4]

This, in turn, is fatal to Plaintiff's "cat's paw" theory. Pl's Memo. at 19-20. Under the Supreme Court's decision in *Straub v. Proctor Hosp.*, 562 U.S. 411 (2011), an employer may be held liable for discrimination based on the discriminatory animus of someone who was not the ultimate decisionmaker, but who intended, by his conduct, to proximately cause the adverse employment action, and did, in fact, cause that employment decision. However, without the requisite discriminatory animus, Scalzo cannot have improperly influenced the ultimate

---

[4] The NYSHRL does not contain a similar carve-out from the definition of "disability. *See* N.Y. Exec. Law § 292(21).

14

decisionmakers on Plaintiff's 2013 tenure application. For these reasons, Plaintiff's disability discrimination claims under the ADA and the NYSHRL must be dismissed.

**III.  Gender Discrimination Claim**

To state a claim for gender discrimination under the NYSHRL, a plaintiff must plausibly allege that she "is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn*, 795 F.3d at 311.[5] As with Plaintiff's other claims, Defendants focus their argument on Plaintiff's purported failure to allege facts giving rise to an inference of discriminatory intent, arguing that Scalzo's alleged comments were "stray remarks" untethered to the decision to deny Plaintiff tenure. Defs' Memo. at 8-12. The Court disagrees.

In support of her claim, Plaintiff alleges that Scalzo "regularly" referred to Plaintiff and her partner as a "bitch" and, on one occasion, commented that Plaintiff seemed like she was having a "hormonal surge." Compl. ¶ 63. Separate from Scalzo's behavior towards her, Plaintiff alleges that Scalzo also had a history of gender-biased decisionmaking of which Bard was aware. In particular, she alleges that, at some point prior to her own tenure application, Nancy Darling was told not to stand for tenure under circumstances that made Dominy suspect Scalzo was discriminating against women, insinuating that it was Scalzo who discouraged Darling. *Id.* ¶¶ 65-67. Beth Gershuny also allegedly experienced gender-based harassment from Scalzo that Gershuny believed was similar to his treatment of Plaintiff. *Id.* ¶¶ 56-61. Finally, Plaintiff alleges that, after she left Bard, the Psychology Program hired only men. *Id.* ¶ 120.

While, as Defendants argue, calling Plaintiff or her partner a "bitch" and making a disparating comment about Plaintiff's "hormonal surge," could very well be considered "stray

---

[5] Although *Littlejohn* is a Title VII discrimination claim, the standard for gender discrimination under the NYSHRL and Title VII is the same. *Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015).

15

remarks," which have no remedy in the law, unlike with Plaintiff's disability discrimination claims, here, she has alleged a great deal more relevant conduct by Scalzo than these remarks. *See Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 136 (2d Cir. 2000) (noting that stray comments must be viewed in context). First, in contrast to Scalzo's alleged comments regarding Plaintiff's mental health made three years prior to the 2013 tenure review, Plaintiff alleges that Scalzo "regularly" referred to her as a "bitch." Compl. ¶ 63. By definition, then, these comments occurred closer in time to Plaintiff's 2013 tenure review.

Second, Plaintiff alleges that Scalzo engaged in gender-biased conduct in connection with Darling's tenure application and sexually harassed Gershuny, itself a form of gender-discrimination, albeit a different type than the discrimination Plaintiff allegedly experienced. Compl. ¶¶ 56-61, 65-67; *see also Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 289 (2d Cir. 1998) ("One form of gender discrimination prohibited by Title VII is sexual harassment that results in a 'hostile or abusive work environment.'") (citation and internal quotation marks omitted). Although Defendants highlight other facts alleged in the Complaint that might suggest a lack of gender bias (*e.g.*, Bard awarded other women tenure during the same time period and women were part of the tenure review process), *see* Defs' Memo. at 10-11, drawing all reasonable inferences Plaintiff's favor, these facts do not so negate the gender-biased conduct Plaintiff described to render her allegations implausible.

Finally, while Defendants argue that Plaintiff has pleaded her gender discrimination claim "as a proxy" for her sexual orientation claim, the two theories can coexist. Defs' Reply at 5. Indeed, the Second Circuit recently cautioned that, when evaluating a complaint involving gender and sexual orientation discrimination claims, "courts should not rely on the mere fact that a complaint alleges sexual orientation discrimination to find that a plaintiff fails to state a separate claim for gender stereotyping discrimination, but should instead independently evaluate

16

the allegations of gender stereotyping." *Christiansen v. Omnicom Grp., Inc.*, 852 F.3d 195, 201 n.2 (2d Cir. 2017). Although Plaintiff's gender discrimination claim is not a gender stereotyping claim, the principle is the same.[6] Plaintiff's status as a lesbian practically necessitates her status as a woman, whether she is one that "presents" as stereotypically feminine or not. Despite the interrelationship of her two claims, both can survive a motion to dismiss if the complaint contains sufficient facts independent of a sexual orientation discrimination claim to plead a plausible claim of gender discrimination. Here, the Court finds that Plaintiff has done so.

## IV. Leave to Amend

Defendants ask that Plaintiff's claims be dismissed with prejudice because Plaintiff "has now had no less than *five* opportunities to plead plausible claims . . . and has failed to do so at every opportunity." Defs' Supp. Memo. at 14; *see also* Defs' Memo. at 16. While the Court of Appeals recently reaffirmed "the liberal standard set forth in Rule 15," *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015), "[o]ne appropriate basis for denying leave to amend is that the proposed amendment is futile," *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002). The Court believes that allowing further amendment here would be futile.

Plaintiff has been privy to Defendants' arguments for dismissal during the briefing completed on three motions to dismiss, and amended her complaint in response to all but the most recent motion. Plaintiff also has had the opportunity to amend her complaint to supplement

---

[6] While the parties refer to Plaintiff's claim as one of gender stereotyping, this is not what Plaintiff has alleged. Plaintiff argues that, upon learning Plaintiff was a lesbian, Scalzo "decide[d] to discriminate against her as a . . . woman who failed to conform to his gender stereotypes." Pl's Memo. at 3. However, the law in this Circuit is clear that "being gay, lesbian, or bisexual, standing alone, does not constitute nonconformity with a gender stereotype that can give rise to a cognizable gender stereotyping claim." *Christiansen*, 852 F.3d at 201. Scalzo's alleged comments regarding Plaintiff's gender do not involve Plaintiff's lack of femininity or other perceived failure to conform to gender stereotypes. Plaintiff alleges that he referred to her as a "bitch"—a derogatory, but feminine, epithet—and commented on her hormonal surge—likely referring to her menses, also a female trait. Compl. ¶ 63.

her allegations based on facts learned during the course of discovery. Her allegations nevertheless remain insufficient as a matter of law. Moreover, when the Court granted Plaintiff leave to amend her complaint a second time, it specifically warned Plaintiff's counsel that it would be unlikely to grant further leave to amend. Perhaps, for this reason, Plaintiff does not argue that she is entitled to amend her complaint a third time. Accordingly, the Court will dismiss Plaintiff's age and disability discrimination claims with prejudice.

## CONCLUSION

For the reasons stated herein, Plaintiff's age and disability discrimination claims are dismissed with prejudice. Defendants' motion to dismiss Plaintiff's gender discrimination claim is denied. The Clerk of the Court is respectfully requested to close Docket Entry Numbers 49 and 82.

**SO ORDERED.**

Dated: June 29, 2017
New York, New York

**ANDREW L. CARTER, JR.**
**United States District Judge**